```
IN THE UNITED STATES DISTRICT COURT
  FOR THE NORTHERN DISTRICT OF INDIANA
            HAMMOND DIVISION
```

CHRISTOPHER D. MAXWELL,       )
                              )
Plaintiff,                    )
                              )    NO. 2:09-CV-337
vs.                           )
                              )
SPEEDWAY SUPERAMERICA, LLC.   )
                              )
Defendant.                    )

**OPINION & ORDER**

This matter is before the Court on: (1) the Motion for Summary Judgment, filed by Speedway Superamerica, LLC on June 13, 2011; and (2) the Motions for Leave to Withdraw, filed by Plaintiff's attorneys, Hugo E. Martz and Andrew Lucas on July 8, 2011. For the reasons set forth below, the Motions for Leave to Withdraw are **GRANTED IN PART** and the Motion for Summary Judgment is **GRANTED.** Plaintiff's claim for lost wages only is **DISMISSED**.

BACKGROUND

In this negligence action, Christopher D. Maxwell ("Maxwell") alleges that he injured his knee after he fell on a wet floor at a Speedway gas station in Portage, Indiana; that Speedway Superamerica, LLC ("Speedway") was negligent in allowing water to accumulate on the floor, creating a dangerous condition that carried unreasonable risk

1

of causing injury; and that Speedway owed Maxwell, a business invitee, the highest duty of care.

Speedway filed the instant Motion for Summary Judgment as to Plaintiff's claim for lost wages only on June 13, 2011.[1] (DE #23). Plaintiff filed a Response to the motion on June 28, 2011. (DE #26). Defendant filed a Reply on July 14, 2011. (DE #30). Plaintiff's attorneys filed their Motions for Leave to Withdraw on July 8, 2011, requesting appropriate attorneys' liens. (DE #28, 29). The motions are now fully briefed and ripe for adjudication.

DISCUSSION

The standards that generally govern summary judgment motions are familiar. Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). In other words, the record must reveal that no reasonable jury could find for the nonmovant. *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the

---
[1] Although not labeled as a motion for partial summary judgment, footnote 4 of Defendant's brief states that, "t]his summary judgment motion by Speedway does not challenge other injuries Maxwell claims related to the injury to his left knee, such as damages relating to medical expenses incurred, pain and suffering, etc." Defendant's Brief, p. 6, n.4.

2

nonmovant. *Anderson*, 477 U.S. at 255; *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 406 (7th Cir. 2009).

According to Rule 56:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c). Furthermore, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it…" Fed. R. Civ. P. 56(e)(2),(3). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that *might affect the outcome* of the suit under governing law will properly preclude the entry of summary judgment.'" *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir. 1988) (citing *Anderson*, 477 U.S. at 248).

Where a party bears the burden of proof on a particular issue, the party may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine dispute requiring a trial. *See Beard v. Whitley Cnty. REMC*, 840 F.2d 405, 410 (7th Cir. 1988); *Hickey v. A.E. Stanley Mfg.*, 995 F.2d 1385,

3

1391 (7th Cir. 1993). Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment will be appropriate.

Facts

For purposes of the instant motion, the facts are largely undisputed. The relevant facts are as follows:

In September 2008, Maxwell slipped and fell inside a Portage, Indiana, Speedway store, injuring his left knee. Maxwell fractured his tibia immediately below the left knee and suffered other injuries to his left knee. Doctor Bruce Thoma ("Dr. Thoma") was the only doctor to treat the left knee. Based on Maxwell's injuries to his left knee and the strenuous nature of Maxwell's job, Dr. Thoma determined that Maxwell could not work following the fall at Speedway. Dr. Thoma diagnosed Maxwell with "patellofemoral chondropathy" and believed that any necessary surgical repair could not take place until the fractured tibia had healed. After the fractured tibia had healed, Dr. Thoma determined that surgery was necessary. The surgery was performed by Dr. Thoma on February 20, 2009. Dr. Thoma eventually felt that, based on the left knee injuries only, Maxwell could return to work in November 2010.

In April of 2007, prior to the fall at Speedway, Maxwell injured his right knee in an elevator accident while working for NIPSCO. The injury to his right knee required several surgeries. The initial surgical interventions were unsuccessful, and Maxwell underwent right knee replacement surgery in July 2008. This surgery led to

4

significant pain. Maxwell was told that surgery had failed, and ultimately, Maxwell had a second right knee replacement in May 2010. Maxwell did not work between December 2007 and November 2010, when Dr. Thoma released him to work from his left knee injury. At the time Dr. Thomas gave Maxwell a release to return to work related to Maxwell's left knee injuries, Maxwell still was not cleared to return to work by doctors treating his right knee.

Maxwell does not dispute that he was not working at the time of the fall at Speedway due to his work-related, right-knee injury. Maxwell likewise concedes that his right-knee injury prevented him from returning to work even after his work restrictions for his left knee injury were lifted. In fact, he sought Social Security Disability Insurance benefits, and the Social Security Administration ("SSA") agreed with Maxwell's assertion that he became disabled on December 11, 2007, and remained disabled through the date of the SSA's decision, March 29, 2011.

Plaintiff's Claim for Lost Wages

In Indiana, the tort of negligence consists of three elements: "(1) a duty owed by the defendant to conform its conduct to a standard of care arising from its relationship with the plaintiff; (2) a breach of that duty; and (3) an injury proximately caused by the breach of that duty." *Benton v. City of Oakland* City, 721 N.E.2d 224 (Ind. 1999). In the instant motion, Speedway challenges only Maxwell's ability to demonstrate that his alleged lost wages were proximately caused by his fall at Speedway.

Proximate cause is generally a question of fact to be determined by the jury. *Peters v. Forster*, 804 N.E.2d 736, 743 (Ind. 2004). The question of proximate cause is a matter of law to be determined by the court "only in plain and indisputable cases, where only a single inference or conclusion can be drawn." *Id.* The instant case is, for the reasons explained below, one of the rare cases where only a single conclusion can be drawn regarding proximate cause.

The Indiana Court of appeals has recognized the difficulty of defining proximate cause, and noted the following:

> While a rigorous definition remains elusive, proximate cause has been defined as that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the result complained of and without which the result would not have occurred. A party's act is the proximate cause of an injury if it is the natural and probable consequence of the act and should have been reasonably foreseen and anticipated in light of the circumstances. Put another way, proximate cause requires, at a minimum, that the harm would not have occurred but for the defendant's conduct.

*Hassan v. Begley*, 836 N.E.2d 303, 307 (Ind. Ct. App. 2005)(internal quotations and citations omitted).

Indiana courts have treated proximate causation as having two components: causation-in-fact and scope of liability. *Kovach v. Caligor Midwest*, 913 N.E.2d 193, 197 (Ind. 2009). "To establish factual causation, the plaintiff must show that but for the defendant's allegedly tortious act or omission, the injury at issue would not have occurred." *Id.* at 197–98. "The 'but for' analysis presupposes that, absent the tortious conduct, a plaintiff would have been spared suffering the claimed harm." *Foddrill v. Crane*, 894

6

N.E.2d 1070, 1077 (Ind. Ct. App. 2008)(quoting *Daub v. Daub*, 692 N.E.2d 873, 877-78 (Ind. Ct. App. 1994)).

A proximate cause, however, need not be the sole cause of the injury. It has long been the law in Indiana that where there are concurring acts of negligence, an injured party may recover from any and all who proximately caused the injury. In 1910, the Indiana Court of Appeals stated the following:

> There may be several proximate causes of a particular injury, some of them innocent, and for which no liability exists on the part of any one; others may be the result of tortious acts of one or more. When this is true, each of the tort-feasors are jointly and severally liable for the injury resulting, and the fact that accidental or innocent causes or conditions and concurring wrongful acts of other parties join to produce the given injury does not affect the liability of any one of the wrongdoers.

*Beaning v. S. Bend Electric Co.*, 90 N.E. 786, 793 (Ind. App. 1910); *see also Boyle v. Anderson Fire Fighters Ass'n*, 497 N.E.2d 1073 (Ind. Ct. App. 1986); *City of Indianapolis v. Bates*, 205 N.E.2d 839 (Ind. App. 1965); *N.Y. Cent. R. Co. v. Cavinder*, 211 N.E.2d 502, 508 (Ind. Ct. App. 1965). The Indiana Model Civil Jury Instructions confirm this principle.

> When the negligence of two or more people combines to become the responsible cause of an injury or harm, and the injured person is not contributorily negligent, then the injured person may recover damages from any or all persons causing the harm, and neither person can claim the negligence of the other as a defense.

Instruction 1123, *Indiana Model Civil Jury Instructions* (2011).[2]

---

[2] While this instruction uses the phrase "responsible cause" rather than "proximate cause", this reflects a recent change in

*Beaning v. S. Bend Electric Co.* provides an example of concurrent causation. 90 N.E. at 787–88. In *Beaning*, an electric company and a telephone company installed utility poles two feet apart. *Id.* The plaintiff was injured when he contacted an exposed portion of an electric wire running from the electric pole while in contact with a grounded metal cable seat on the telephone pole. *Id.* The separate acts by the defendants came together simultaneously, causing the plaintiff's electrocution; as such, they were concurring causes. *Id.* at 793.

Similarly, in *Cavinder*, a car in which the plaintiff was a passenger was struck by a train. 211 N.E.2d at 505. The roads were icy and the view of the railroad tracks was obstructed. *Id.* at 505-06. A jury found for the Plaintiff, and against the railroad company. *Id.* at 505. The Indiana Court of Appeals affirmed the jury's finding that the railroad was negligent. *Id.* at 509. The Court noted that "[a]lthough it may be strictly accurate to say that there can be but one proximate cause of an injury several elements may combine to make up the proximate cause of an injury, and in order to render a person liable his negligence need not be the sole proximate cause of an injury; it being sufficient that his negligence, combining with one or more efficient causes, other than plaintiff's fault, is the proximate

---

jury instructions. The Indiana Supreme Court has tacitly approved this substitution, noting that "[t]he new Indiana Model Civil Jury Instructions, which seek to provide guidance to juries using 'plain English' recommends the avoidance of the term 'proximate cause' by including the concept as part of the term 'responsible cause.'" *See Green v. Ford Motor Co.*, 942 N.E.2d 791, 795 n.1 (Ind. 2011); *see also Fratter v. Rice*, 954 N.E.2d 497, 503-504 (Ind. Ct. App. 2011).

8

cause of the injury." *N.Y. Cent. R. Co. v. Cavinder*, 211 N.E.2d 502, 508 (Ind. Ct. App. 1965). The Court found that there was insufficient evidence to allow the Court to find as a matter of law that the icy roads alone caused of plaintiff's injury and the jury's judgment was not contrary to law. *Id*.

In contrast, the *Kovach* case, in which a child died following administration of prescription codeine, did not involve concurrent causes. 913 N.E.2d at 195. The nurse who administered the medication to the child testified that she administered 15 mL of medication, but the child's father alleged that he saw the nurse administer the codeine and that she gave him a full cup, which would be 30 mL of codeine. *Id*. The cup the nurse used had "translucent markings to measure its contents, and graduations delineated both 15 and 30 mL." *Id*. The parents sued the cup's manufacturer, alleging that imprecise markings in the cup were the proximate cause of their child's death. *Id*. at 198. The Indiana Supreme Court found that "[t]he undisputed evidence thus demonstrates that if there was an overdose in this case, it was not caused by an imprecise measurement of medication attributable to less than readily discernible marks. Rather, if the codeine was the cause of [the child's] death, it was due to an erroneous double dosage of 30 mL of codeine when [he] was supposed to receive 15 mL. The accident therefore cannot be attributed to any alleged defects in the cup itself." *Id*.

This instant case is more analogous to *Kovach* than *Beaning* or *Cavinder*. Defendant's alleged negligence did not occur simultaneously with Plaintiff's pre-fall injury the way the two causes of injury came

9

together in *Beaning* and *Cavinder*. *See Beaning*, 90 N.E. at 793; *Cavinder*, 211 N.E.2d at 509. Rather, Plaintiff was already off work due to his workplace injury at the time of the fall at Speedway. Plaintiff was unable to work from December 2007 (the date of the work injury) through at least March 2011 (when SSA issued its decision finding Plaintiff disabled) due to his workplace injury. Maxwell's workplace injury prevented him from returning to work for the entire duration of time for which the injury to the left knee would have prevented him from working had he been otherwise able to do so. In other words, Maxwell would have suffered lost wages of the same magnitude with or without any injury to his left knee. Accordingly, the only proximate cause of Maxwell's lost wages supported by the record before this Court is the December 2007 elevator accident. Defendant's alleged negligence cannot, under these facts, be viewed as a concurrent proximate cause of Maxwell's lost wages. Maxwell has failed to raise a genuine dispute of material fact as to the proximate cause of his lost wages following the fall at Speedway.

<u>Motions for Leave to Withdraw</u>

On July 8, 2011, Maxwell's counsel sought to withdraw, reporting irreconcilable differences with Maxwell. The motions, however, indicated that Maxwell's counsel would agree to represent him thought the conclusion of the instant summary judgment motion to assure Maxwell was not prejudiced by the timing of the motion for leave to withdraw. Additionally, counsel asked the Court "to place an appropriate attorney's lien on file." No further information was

provided. Although the request to withdraw is well taken and is **GRANTED,** the request for an attorney lien is vague, unsupported, and cannot be granted based on the motion provided by counsel.

CONCLUSION

For the reasons set forth above, the Defendant's Motion for Summary Judgment (DE #23) is **GRANTED**. Plaintiff's claim as to lost wages is **DISMISSED**. All other claims remain pending. Plaintiff's attorneys' Motions for Leave to Withdraw (DE # 28, 29) are **GRANTED** except to the extent they ask this Court to place an appropriate attorney's lien on file.

**DATED:    March 5, 2012**                    /s/ RUDY LOZANO, Judge
                                               **United States District Court**